UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80702-CIV-RYSKAMP/VITUNAC

LORI JO BAILEY, as Personal Representative
of the Estate of Chad Edgar Beal,

    Plaintiff,

V.

JANSSEN PHARMACEUTICA, INC.,
JANSSEN, L.P., ALZA CORP.,
JOHNSON & JOHNSON, and
WALGREENS CO.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTIONS TO STRIKE AND TO REMAND AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE comes before the Court pursuant to several motions. Defendants Janssen Pharmaceutica, Inc., Janssen, L.P. and Alza Corporation (collectively, "Janssen") moved to dismiss on July 28, 2006 **[DE 9]**. Plaintiff Lori Jo Bailey ("Plaintiff") responded on August 9, 2006 **[DE 19]**. Defendant Johnson & Johnson, Inc. ("Johnson & Johnson") moved to dismiss on July 20, 2006 **[DE 8]**. Plaintiff responded on August 9, 2006 **[DE 17]**. Defendant Walgreens Co. ("Walgreens") moved to dismiss on July 28, 2006 **[DE 10]**. Plaintiff responded on August 9, 2006 **[DE 16]**. Defendants replied collectively on August 21, 2006 **[DE 22]**. This cause is also before the Court pursuant to Plaintiff's Motion to Strike, filed August 7, 2006 **[DE 12]** and Motion to Remand, filed August 7, 2006 **[DE 13]**. Defendants responded on August 15, 2006 **[DE 20]**. Plaintiff did not reply. These motions are ripe for adjudication.

## I. BACKGROUND

Duragesic is a transdermal patch that contains fentanyl, an opioid analgesic. Johnson & Johnson is involved in the research and development of chemicals common drugs and narcotics delivery systems. Johnson & Johnson is the parent company of Janssen and Alza. Janssen is involved in the research and development, manufacturing and distribution of chemical compounds, drugs, medications and medical delivery systems, including fentanyl patches. Alza manufactures the product, which Walgreens allegedly sells in Palm Beach County, Florida. A person wears the patch for 72 hours, during which fentanyl enters the body through the skin. The patch is indicated for the management of chronic moderate to severe pain and is available by prescription only.

Chad Edgar Beal ("Decedent") underwent spinal surgery on March 3, 2004. On March 4, 2004, Decedent was discharged from the hospital. His surgeon, Dr. David MacMillan ("Dr. MacMillan"), prescribed duragesic patches, 75 MCG, for relief of post-surgical pain. Upon discharge, Decedent obtained the patch from Walgreens. On March 5, 2004, Decedent died from fentanyl toxicity. Plaintiff brings this wrongful death action.

## II. MOTION TO REMAND

Plaintiff Plaintiff served Walgreens on May 12, 2006, Alza on May 15, 2006, Janssen on May 19, 2006 and Johnson & Johnson on June 22, 2006. Johnson & Johnson removed this action to this Court with the consent of all Defendants on July 24, 2006.[1] On August 7, 2006, Plaintiff filed a Motion to Strike Defendants' Notice of Joinder based on the "first-served defendant rule,"

---

[1] July 22, 2006 is 30 days from June 22, 2006. July 22, 2006, however, was a Saturday. Accordingly, the 30 day period expired on July 24, 2006. See Rule 6(a).

arguing that the 30 day removal period begins the date the first-served defendant receives service. Application of this theory would render Johnson & Johnson's notice of removal untimely.

      The relevant portion of 28 U.S.C. § 1446 provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based..." The plain language of the statute speaks in terms of "the defendant" and does not address the timeliness of the notice of removal when there are multiple defendants with multiple dates of service. See Smith v. The Health Care Ctr. of Lake City, Inc., 252 F.Supp.2d 1336, 1341 (M.D. Fla. 2003). Applying the "first-served rule" would force injection of the word "first" before "defendant" in the language of the statute. Accordingly, the later-served defendant has 30 days from the date of its service to remove the case to Federal Court. See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999). Thus, regardless of when or if any previously served Defendants had filed any petition for removal, Johnson & Johnson had 30 days from when it was served to file its petition for removal. Inequity would result if Johnson & Johnson's time to remove began to run prior to the time it was actually served; the "first-served rule" would allow a plaintiff to prevent removal by serving a second defendant on the thirtieth day after the first defendant was served. See McKinney v. Bd. of Trustees of Maryland Comm. College, 955 F.2d 924, 928 (4th Cir. 1992).

      Although the other Defendants may have waived their right to seek removal directly, their consent to Johnson & Johnson's removal of this action was proper. As Brierly noted, a first-served defendant may consent to the later-served defendant's removal "despite having already failed in its own efforts to remove." 184 F.3d at 533 n.3. Plaintiff's motion to strike and motion

to remand are denied.

### III.  MOTIONS TO DISMISS

**A.     Legal Standard**

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  When examining a motion to dismiss, this Court considers whether the plaintiff has alleged facts sufficient to state a claim for relief.  A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)).

**B.     Discussion**

**1.     Comingling of Counts**

Plaintiff brings an eight-count Complaint, suing each Defendant for wrongful death under theories of both strict liability and negligence.  Each of the eight counts, however, contains myriad "sub-counts," each of which constitutes its own cause of action.  Count I, for example, is a claim for wrongful death against Janssen based on a theory of strict liability.   This count contains a total of six counts, including claims for strict liability product defect, strict liability failure to warn, breach of warranty of fitness for a particular purpose, breach of warranty of

merchantability, fraudulent misrepresentation and reckless disregard of unreasonable risk of harm.  Count II, also alleged against Janssen, is a wrongful death claim sounding in negligence. The count, however, contains four sub-counts alleging negligent misrepresentation, negligent non-disclosure, negligent failure to warn and negligent supply of a dangerous instrumentality. The Eleventh Circuit has frowned on such pleading, as it prevents defendants from understanding the nature of their alleged wrongdoing, thereby preventing them from forming reasonable responses to the allegations.  See Beckwith v. Bellsouth Telecommunications, Inc., 146 Fed. Appx. 368, 371 (11th Cir. 2005) ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'") (citation omitted).  The Defendants are entitled to a Complaint containing specific allegations of their alleged wrongdoing separated into individual counts.  Hence, the entire Complaint is dismissed on procedural grounds for improper pleading.  The Complaint also suffers from several substantive difficulties, which the Court will now address.

### 2.     Strict Liability Product Defect - Counts I(A), III(A), V(A), VII(A)

Each Defendant moves to dismiss the claims for strict liability product defect for failure to state a claim upon which relief can be granted for failure to comply with Rule 8 pleading standards. The Complaint alleges that the patch was unreasonably dangerous because it delivered fentanyl in an unpredicted rate, its protective liner and functional layers leaked, contained inadequate instructions and delivered a lethal dose of fentanyl to the decedent.  Yet these claims do not mention how, if at all, the patch was defective, nor is there any allegation

connecting a potential defect to the product's design or manufacturing process. In <u>Kohler Co. v. Marcotte</u>, 907 So.2d 596 (Fla. 3d DCA 2005), plaintiff filed a strict liability design defect action against Koehler, a manufacturer of lawn mower parts, for injuries to her seven-year-old son. The court held that the company was not liable because the engine was not defective in and of itself. <u>Id</u>. at 600. Citing the Second Restatement of Torts, the court distinguished manufacturing and design defects: a manufacturing defect exists where the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product, yet a design defect exists where the foreseeable risk of harm posed by the product could have been reduced or avoided by adopting a reasonable alternative design and the failure to adopt that design renderers the product not reasonably safe. <u>Id</u>. at 599. Here, Plaintiff merely asserts that the patch was in a "defective and unreasonably dangerous condition."  As to Walgreens, there are no allegations that the patch reached Decedent without a substantial change in the condition in which it was allegedly sold, an essential element of a strict liability product defect claim against a seller. See <u>Amoroso v Samuel Freidland Family</u>, 604 So.2d 827, 834 (Fla. 4th DCA 1992). Whether the alleged defects occurred in the assembly line as opposed to an overall design defect remains a mystery. As a result, the Defendants are prejudiced in that they cannot determine which doctrine is at issue, much less how to frame a proper response.

Plaintiff contends that there is no requirement to plead strict liability with particularity, yet the cases she cites to bolster this argument hold to the contrary. In <u>Lewis v. City of Tallahassee</u>, 2006 WL 231291 at *4 (N.D. Fla. 2006), plaintiff asserted claims of a manufacturing defect in Count 17 of the complaint and a design defect in Count 18 of the complaint. In <u>Cunningham v. General Motors Corp.</u>, 561 So.2d 656, 660 (Fla. 1st DCA 1990),

plaintiff stated a cause of action for manufacturing defect by specifically alleging defective assembly of a clutch cable and clutch clip resulting in an unreasonably dangerous condition of a motor vehicle.  In Benitez v. Synthes, 199 F.Supp.2d 1339, 1343 (M.D. Fla. 2002), the complaint alleged a valid cause of action for strict liability manufacturing defect because the plaintiff adequately pleaded that the rod inserted into the plaintiff's tibia was unreasonably dangerous in that its defective manufacture made the it susceptible to crack and spontaneously break following surgery.  The strict liability product defect claims, Counts I(A), III(A), V(A), and VII(A), are dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### 3.     Strict Liability Failure to Warn - Counts I(B), III(B), V(B), VII(B)

All Defendants move to dismiss the strict liability failure to warn counts on the grounds that they fail to state a claim upon which relief can be granted due to failure to plead the essential elements of the claim.  In Florida, a prima facie case of strict liability failure to warn requires pleading and proving the following: (1) the defendant did not adequately warn of a particular risk that was, (2) known or knowable, (3) in light of the generally recognized and prevailing best scientific and medical knowledge, (4) available at the time of manufacture and distribution. Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1172 (Fla. 4th DCA 1998) (citations omitted). Here, the strict liability failure to warn allegations lack facts establishing that the warnings were inadequate in light of the generally recognized and prevailing scientific and medical knowledge at the time of manufacture.  Plaintiff simply alleges that Defendants did not give an adequate

8

warning regarding the dangers of using the patch post-operatively, or the presence of side effects, etc.  Counts I(B), III(B), V(B) and VII(B) do not contain allegations asserting that Defendants failed to provide an adequate warning to the physician regarding the risk of serious injury or death as a result of using the patch in an unintended manner.  Accordingly, these counts are dismissed with leave to amend.[2]

    **4.**    **Strict Liability Breach of Warranty of Fitness for a Particular Purpose and Strict Liability For Breach of Warranty of Merchantability - Counts I(C, D), III(C, D), V(C, D), VII(C, D)**

        **a.**    **Johnson & Johnson, Janssen**

Johnson & Johnson and Janssen argue that the claims for breach of warranty of fitness for a particular purpose and breach of implied warranty fail to state a claim upon which relief can be granted due to lack of privity as well as the unavailability of a cause of action for strict liability.

Absent privity, there can be no claim for breach of warranty, either express or implied.  See Weiss v. Johansen, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005) (quoting Intergraph Corp. v. Stearman, 555 So.2d 1282, 1283 (Fla. 2d DCA 1990) (holding that privity is required to recover damages from the seller of a product for breach of express or implied warranties)).  See also Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of America Inc., 444 So.2d 1068, 1072  (Fla. 3d DCA 1984).  Plaintiff has failed to allege the existence of privity between

---

[2]Florida courts have held that pharmacies do not have a general duty to warn a patient of any potential adverse reactions to the prescription absent specialized knowledge of the patient's medical history.  See Johnson v. Walgreen Company, 675 So.2d 1036, 1038 (Fla. 1st DCA 1996) holding that a pharmacy does not have a duty to warn a patient of the potential adverse drug interaction).

decedent and Johnson & Johnson, and Janssen. On the contrary, Plaintiff admits that "Dr. David M. McMillan prescribed duragesic patch for relief of post-surgical pain to the decedent." (Complaint, p. 5.)

Further, because Plaintiff can allege strict liability claims, claims for breach of warranty of fitness for a particular purpose and breach of warranty of merchantability are inappropriate. "[T]he doctrine of strict liability [has] replaced all no-privity, breach of warranty liability." Indemnity Ins. Co. of North America v. American Aviation Inc., 891 So.2d 532, 539 (Fla. 2004). The Florida Supreme Court has held that strict products liability "supplants common law implied warranty in the absence of privity of contract in those instances in which a cause of action for strict liability is appropriate." Kramer v. Piper Aircraft Corp., 520 So.2d 37, 39-40 (Fla. 1988). Otherwise stated, "if a user is injured by a defective product, but the circumstances do not create a contractual relationship with the manufacturer, then the vehicle for recovery could be strict liability in tort." West v. Caterpillar Tractor Co. Inc., 336 So.2d 80, 91 (Fla. 1976).

Plaintiff erroneously contends that Fla. Stat. § 672.318 is applicable to the instant case.[3] This statute applies only to non-direct purchasers if they reside in or are a guest in the direct purchaser's household, if they are agents of the direct purchaser, or if the non-direct purchaser is a foreseeable user of the product in question and is injured by the product.

---

[3] This statute provides as follows:

> a seller's warranty, whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in the home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

Fla. Stat. § 672.318.

Plaintiff has not alleged the existence of a contractual relationship or direct sale between decedent and Johnson & Johnson and Janssen. Rather, the claims relate to the injuries sustained as a result of the use of an allegedly defective product that was not purchased directly from these Defendants, thus, strict liability is the appropriate cause of action, not breach of warranty for a particular purpose. Accordingly, the breach of warranty claims against Johnson & Johnson and Janssen are dismissed with prejudice.

      **b.**     **Walgreens**

Walgreens argues that Plaintiff has failed to state a cause of action for breach of the warranty of fitness for a particular purpose because it had no reason to know the particular use of the patch. Florida law provides that a valid cause of action for breach of warranty of fitness for particular purpose requires the following allegations: (1) the seller at the time of contracting had reason to know any particular purpose for which the goods are required, and (2) that the buyer is relying on the seller's skill or judgment to select the goods. See Dunham-Bush, Inc. v. Thermo-Air Service, Inc., 351 So.2d 351 353 (Fla. 4th DCA 1977). The Complaint does not contain any factual allegations establishing that, at the time of the purchase, Decedent was relying on Walgreens' skill and judgment regarding use of the patch for post-operative use. Nor are there any facts establishing that Walgreens had reason to know that Decedent's physician prescribed the patch for post-operative use. Rather, the Complaint merely states that Walgreens knew or should have known of the use for which the patch was prescribed, but such conclusory allegations are insufficient. Additionally, the Complaint lacks any factual allegations establishing that Walgreens made any representations to the decedent or his physician regarding use of the patch which decedent reasonably relied on. Accordingly, the count is dismissed

without prejudice a for failure to state a claim.

Walgreens also maintains that Plaintiff has failed to state a claim for breach of the implied warranty of merchantability because Decedent did not use the patch in its intended manner. A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner, (3) the product was defective when transferred from the warned or, and (4) the defect caused the injury. Amoroso, 604 So.2d at 833. The Complaint contains no factual allegations that the patch failed during its use in its reasonable and usual manner. Rather, it is undisputed that at the time of injury, Decedent was using the patch for an unintended use. Second, the Complaint offers no facts establishing that the patch was unmerchantable at the time of sale. Husky Indus., Inc. v. Black, 434 So.2d 988, 991 n.3 (Fla. 4th DCA 1983) (citations omitted) (claims for breach of implied warranty of merchantability must be predicated on allegations that the product was unmerchantable at sale). The Complaint merely alleges that at the time of sale the patch was not fit for post-surgical treatment of pain. Such does not render the patch defective so as to give rise to a valid cause of action for breach of the warranty of merchantability. This Count is dismissed without prejudice for failure to state a cause of action upon which relief can be granted.

  5.  **Strict Liability Fraudulent Misrepresentation -
    Counts I(E), III(E), V(E), VII(E)**

All of the Defendants move to dismiss the fraudulent misrepresentation counts on grounds of lack of standing, failure to plead specific facts underlying the claim and lack of justifiable reliance.

Plaintiff does not allege that Defendants provided Decedent's physician with an inadequate warning regarding the patch. In Florida, a prescription drug manufacturer's duty to warn runs to the physician, not to the patient. A drug manufacturer has a duty to warn, but the manufacturer fulfills that duty by providing "an adequate warning ... to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs." Buckner v. Allergan Pharmaceuticals, Inc., 400 So.2d 820, 822 (Fla. 5th DCA 1981) (affirming the lower court's dismissal for failure to state a cause of action against the manufacturer). Absent such an allegation, Plaintiff lacks standing to bring suit under this theory.

Defendants also maintain that the fraudulent misrepresentation claim must be dismissed because it has not been alleged with particularity as required by Rule 9(b). Adequate pleading of a claim of fraud requires allegations of "who made the false statements, the substance of the false statement, the time frame in which it was made, in the context in which the statement was made." Bankers Mutual Capital Corporation v. United States Fidelity & Guarantee Company, 784 So.2d 485, 490 (Fla. 4th DCA 2001). Plaintiff has failed to state who made the alleged fraudulent misrepresentation, to whom the alleged misrepresentation was made, the substance of the fraudulent misrepresentation, or how the misrepresentation caused the damages alleged. The allegation that Johnson & Johnson represented that the patch was "safe" for the relief of post-surgical pain if overly broad and vague. Plaintiff also fails to allege how the alleged damages were causally related to the alleged fraud. "Fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud unless causally connected to the fraud." Simon v. Celebration Co., 883 So.2d 826, 833 (Fla. 5th DCA 2004).

Defendants maintain that the fraudulent misrepresentation claims must be dismissed with

prejudice because any alleged reliance on the part of Decedent or his physicians was not justifiable because the box warned that the patch was not for acute or post-operative use. The Complaint contains no information as to any warnings on the box itself, however. As a result, the Court is not at liberty to consider this information on a motion to dismiss. Grossman v. Nationsbank, 225 F.3d at 1231. The fraudulent misrepresentation claims are dismissed without prejudice.

      6.      **Strict Liability Reckless Disregard of Unreasonable Risk of Harm - Counts I(F), III(F), V(F), VII(F)**

All Defendants move for dismissal of the claims for reckless disregard of unreasonable risk of harm on grounds of failure to state a cause of action. Plaintiff concedes that the claim for reckless disregard of unreasonable risk of harm is not a valid cause of action in the State of Florida and agrees to its dismissal. Accordingly these counts are dismissed with prejudice.

      7.      **Negligent Misrepresentation - Counts II(A), IV(A), VI(A), VIII(A)**

Plaintiff also sues all Defendants for negligent misrepresentation. The negligent misrepresentation claim must be dismissed for failure to state a cause of action for the same reasons forming the basis for the dismissal of the claim for fraudulent misrepresentation. "The elements of negligent misrepresentation action are identical to those for common law fraud, except that in the former, actual knowledge is not required in order to establish scienter." Tapken v. Brown, 1992 WL 178984 *24 (S.D. Fla. 1992) (citation omitted). Plaintiff has not stated whether a representation was made to Decedent's doctor and if so how the misrepresentation was inadequate. Therefore, Plaintiff has not established that Defendants owed Decedent a direct duty and consequently has failed to state a cause of action for negligent

14

misrepresentation.

Negligent misrepresentation, like fraud, must also be pled with specificity.  Morgan v. W. R. Grace & Co., 779 So.2d 503, 506 (Fla. 2d  DCA 2000).  Yet Plaintiff's negligent misrepresentation counts lack all of the information the fraudulent misrepresentation counts lack.

Again, Defendants maintain that these counts must be dismissed with prejudice because any alleged reliance on the part of Decedent or his physicians was not justifiable because the box warned that the patch  was not for acute or post-operative use.  Yet the Court is not at liberty to consider this information on a motion to dismiss.  Grossman, 225 F.3d at 1231.  The negligent misrepresentation claims are dismissed without prejudice.

### 8. Negligent Non-disclosure - Counts II(B), IV(B), VI(B), VIII(B)

#### a. Johnson & Johnson, Janssen

As to the negligent non-disclosure claim, Florida law provides that a prescription drug manufacturer's duty to warn runs to the physician, not the patient.  Cornelius, 2004 WL 48102. These counts are void of any facts establishing that the physicians were not independently aware of the alleged dangers and risks associated with the use of the patch for post-surgical pain relief. Plaintiff merely alleges that Johnson & Johnson and Janssen negligently failed to disclose the dangers and risks of using the patch for post-surgical pain relief.  Accordingly, the claim for negligent non-disclosure is dismissed against Johnson & Johnson and Janssen without prejudice.

#### b. Walgreens

Plaintiff alleges that Walgreens negligently failed to disclose to Decedent's physicians the dangers and risks of using the patch for post-surgical pain relief.  Walgreens moves to dismiss on

the grounds that the package contained a warning that the patch was not intended for post-surgical pain relief.  Again, this argument raises facts extraneous to the four corners of the Complaint.   The motion to dismiss the claim for negligent non-disclosure against Walgreens is denied.

      **9.**      **Negligent Supply of a Dangerous Instrumentality for a Business Purpose - Counts II (D), IV(D), VI(D), VIII(D)**

Plaintiff agrees to the dismissal of these counts, recognizing that they fail to state a valid cause of action under Florida law.  Accordingly, these counts are dismissed with prejudice.

### IV.  <u>CONCLUSION</u>

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby .

ORDERS AND ADJUDGES that Plaintiff's Motion to Strike, filed August 7, 2006 **[DE 12]** and Motion to Remand, filed August 7, 2006 **[DE 13]**, are DENIED.  It is further

ORDERED AND ADJUDGED that Defendants' Motions to Dismiss, filed July 20, 2006 **[DE 8],** July 28, 2006 **[DE 9]** and July 28, 2006 **[DE 10]** are GRANTED IN PART AND DENIED IN PART at explained herein.  Plaintiff shall have 20 days from the date of this order to file an amended complaint..

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 14th day of November, 2006.

| | |
|---|---|
| Copies provided: | S/ Kenneth L. Ryskamp |
| all parties and counsel of record | KENNETH L. RYSKAMP |
| | UNITED STATES DISTRICT COURT |


16